# In the United States Court of Appeals for the Eighth Circuit

CUSTOM COMMUNICATIONS, INC., D/B/A CUSTOM ALARM, ET AL.

*Petitioners*,

v.

FEDERAL TRADE COMMISSION,

*Respondent*.

On Petitions for Review of an Order of the
Federal Trade Commission

## REPLY IN SUPPORT OF MOTION FOR STAY PENDING DISPOSITION OF PETITIONS FOR REVIEW

Helgi C. Walker
  *Counsel of Record*
Lucas C. Townsend
Michael P. Corcoran
Lael D. Weinberger
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*

*Additional counsel listed on next page*

Elliott M. Davis
SHOOK, HARDY & BACON L.L.P.
1800 K Street N.W.
Suite 1000
Washington, DC 20006
(202) 783-8400
edavis@shb.com

*Counsel for Custom
Communications, Inc., d/b/a
Custom Alarm*

Benjamin M. Flowers
ASHBROOK BYRNE KRESGE LLC
P.O. Box 8248
Cincinnati, OH 45249
513-201-5775
bflowers@ashbrookbk.com

*Counsel for Michigan Press
Association and the National
Federation of Independent
Business, Inc.*

Mark D. Johnson
GILBERT, HARRELL, SUMERFORD &
MARTIN, P.C.
777 Gloucester Street
Suite 200
Brunswick, GA 31520
(912) 265-6700
mjohnson@ghsmlaw.com

*Counsel for the Chamber of
Commerce of the United States of
America and the Georgia
Chamber of Commerce*

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. CHAMBER LITIGATION CENTER
1615 H Street, N.W.
Washington, DC 20062

*Counsel for the Chamber of
Commerce of the United States of
America*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 3

I.     Petitioners Are Likely To Prevail On The Merits. ......................... 3

    A.    The Commission lacks authority to issue this Rule. .............. 3

    B.    The Commission violated multiple procedural requirements. .......................................................................... 8

    C.    The Rule is arbitrary and capricious. ................................... 9

    D.    The Rule violates the First Amendment. ............................ 10

II.    The Balance Of Equities Supports A Stay .................................... 12

III.   The Stay Should Not Be Limited To Declarants. ......................... 13

CONCLUSION ................................................................................. 15

Appellate Case: 24-3137    Page: 3    Date Filed: 01/02/2025 Entry ID: 5471568

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Career Colleges & Schools of Tex. v. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) .......................................................... 14, 15

*Iowa Utilities Bd. v. F.C.C.*,
109 F.3d 418 (8th Cir. 1996)................................................. 12, 13, 14

*Nebraska v. Biden*,
52 F.4th 1044 (8th Cir. 2022) ........................................................ 3, 14

*NIFLA v. Becerra*,
585 U.S. 755 (2018)............................................................................... 12

*Nken v. Holder*,
556 U.S. 418 (2009)............................................................................... 13

*Ohio v. Env't Prot. Agency*,
603 U.S. 279 (2024)................................................................................. 9

*Religious Sisters of Mercy v. Becerra*,
55 F.4th 583 (8th Cir. 2022) ............................................................. 15

*Texas v. United States*,
40 F.4th 205 (5th Cir. 2022) ............................................................. 13

*Warth v. Seldin*,
422 U.S. 490 (1975)............................................................................... 14

*West Virginia v. EPA*,
577 U.S. 1126 (2016)............................................................................. 14

*West Virginia v. EPA*,
597 U.S. 697 (2022)................................................................................. 7

*Worth v. Jacobson*,
108 F.4th 677 (8th Cir. 2024) ..................................................... 14, 15

Appellate Case: 24-3137    Page: 4    Date Filed: 01/02/2025 Entry ID: 5471568

# TABLE OF AUTHORITIES
*(continued)*

**Page**

## Statutes

5 U.S.C. § 705 ................................................................. 13, 14

15 U.S.C. § 57a ........................................................ 5, 6, 9, 13, 14

15 U.S.C. § 57b-3 .................................................................. 8

15 U.S.C. § 1693c ................................................................. 6

15 U.S.C. § 6102 .................................................................. 6

15 U.S.C. § 8402-04 ............................................................... 6

## Other Authorities

S. Rep. No. 96-500 (1979) ...................................................... 2, 4

## Regulations

16 C.F.R. Part 433 ................................................................ 7

16 C.F.R. Part 436 ................................................................ 7

Appellate Case: 24-3137    Page: 5    Date Filed: 01/02/2025 Entry ID: 5471568

## INTRODUCTION

The Commission's Opposition confirms that the Rule exceeds the agency's authority and should be stayed. Repeatedly, the Commission defends the Rule by effectively reading pivotal restrictions on its rulemaking powers out of the statute—proving that the Rule can't survive under the limitations Congress imposed to rein in the agency's rulemaking powers.

Take the requirement for "specificity." The Commission asserts that its vague regulation of over a billion existing contracts (and countless future contracts) is acceptable so long as they have something—*anything*—in common. As for the requirement to show "prevalent" unfair or deceptive practices, the Commission tries to duck it by saying, incorrectly, that the Court can't review this requirement. The required preliminary regulatory analysis? The Commission asserts it didn't need one. The legislative command to hear disputed issues of material fact? The Commission says it didn't need to do that, either.

At every turn, the Commission's answer would accomplish exactly what Congress meant to *stop* in the Magnuson-Moss reforms: a Commission empowered to override Congress's choices and write its own

1

cavernous code of consumer protection. The Commission tries to downplay Magnuson-Moss by asserting that, when Congress first enacted Section 18, it codified the agency's rulemaking authority. That much is true, but the Commission ignores both the unique limits on that authority and what happened next: The Commission tried to promulgate sweeping rules that went "beyond the intent of Congress," S. Rep. No. 96-500, at 2 (1979), and Congress reacted by adopting further express statutory restrictions on the Commission's powers that essentially ended its rulemakings for decades. Mot.4-6. This Rule would undo those restrictions and upend the statutory scheme.

Worse, the Rule usurps Congress's policy judgments. Congress has enacted multiple statutes that govern recurring subscriptions, each narrower than this Rule. The Commission never disputes that the Rule is broader and more onerous than all those statutes combined; the agency effectively says it is free to override Congress's choices. Wrong again. The explicit *limits* on the Commission's authority are hardly license to overrule Congress.

The Rule should be stayed to prevent the extensively documented, irreparable harms that Petitioners and their members will suffer absent

relief. The Commission tries to minimize these harms by waving away the First Amendment and ignoring how the Rule's overbreadth will chill lawful speech. The Commission also baselessly attacks Petitioners' declarations as "boilerplate," Opp.25, while offering nothing to refute these sworn and commonsense statements. These declarations, tailored to each business or industry, amply demonstrate that the Rule's novel, sweeping, and complex requirements will impair First Amendment rights, damage customer goodwill, and impose major compliance costs.

## ARGUMENT

## I. Petitioners Are Likely To Prevail On The Merits.

Petitioners are likely to succeed on the merits. At minimum, Petitioners have demonstrated that the Rule "involve[s] substantial questions of law" warranting a stay. *Nebraska v. Biden*, 52 F.4th 1044, 1047 (8th Cir. 2022).

### A. The Commission lacks authority to issue this Rule.

No other federal agency is subject to the tight rulemaking constraints that Congress imposed on the Commission. The Commission can regulate only specific, prevalent unfair or deceptive practices—yet

3

the agency never explains how that limited authority could justify this admittedly "prophylactic" Rule. Opp.2.

*First*, the Rule goes far beyond the statute's "specificity" limit. Mot.13-14. The Commission concedes that the Rule sweeps together over a billion existing contracts, across industries, with nothing in common except that they continue until the customer cancels—while insisting this singular gossamer thread is sufficient. Opp.10-11. That would read the "specificity" requirement out of the statute. *See* S. Rep. 96-500, at 3 (Section 18 authorized "*industry*-wide rules," not economy-wide rules). Under the Commission's view, it could regulate all "business contracts" or all "advertisements" under similar, highly generalized umbrella terms; the need to target "specific[]" trade practices would become a mere check-the-box exercise. But Congress doesn't enact empty formalisms.

The Commission also barely defends the Rule's amorphous and vague terms. Opp.10-11. The Commission concedes that "different kinds of information may be material for different kinds of transactions" (thus proving that "materiality" isn't specific), while insisting that terms like "material" are established at common law and in SEC rules. *Id.* But neither the common law nor the SEC's statutes requires "specificity"

4

when proscribing conduct. And that doesn't justify numerous other vague terms, including the ban on information that "detracts from" or "otherwise undermines" disclosures or the need for cancellation to be "as easy" as sign-up. *E.g.*, Rule §§ 425.4(b)(3), 425.6(b).

*Second*, the Commission concedes that this "prophylactic" Rule extends further than the industries and companies for which it claims it has evidence of "prevalent" unfair or deceptive practices. Opp.2, 11-12. The Commission thinks evidence matching the scope of the Rule is unnecessary, but the statute requires proof that *all* the "specific[]" "unfair or deceptive acts or practices which are the subject of the proposed rulemaking are prevalent." 15 U.S.C. § 57a(a)(1)(B), (b)(3). If the Commission wishes to regulate a billion-plus contracts for all industries and all companies across the entire economy and say its Rule is "specific[]," it must justify all of that regulation. It hasn't.

The Commission also says that the Court can't review its statement of basis and purpose, Opp.12, but Petitioners don't challenge that statement—Petitioners challenge *the Rule* as ultra vires. The statute explicitly confines the Commission's rulemaking authority to "prevalent" practices, 15 U.S.C. § 57a(b)(3), and the restriction on judicial review

5

doesn't extend to the required prevalence finding, *id.* § 57a(e)(5)(C) (no mention of § 57a(b)(3)).

*Third*, the Commission barely disputes that the Rule is broader and more onerous than all of Congress's statutes regarding recurring subscriptions. The Commission asserts that the Rule proscribes conduct already prohibited by the FTC Act simply because the agency has now deemed it unfair, Opp.12-13, but that's circular. The Commission also posits that its rulemaking authority under Section 18 is coextensive with its power to implement ROSCA and other statutes, but that ignores the constraints Congress imposed on Section 18 and the fact that Congress elsewhere gave the agency specific authority over only particular types of recurring subscriptions. *E.g.*, 15 U.S.C. §§ 1693c, 6102, 8402-04. The agency never disputes that the Rule regulates far more recurring subscriptions than all those other statutes, and that the Rule imposes requirements not found in any of those statutes. Section 18's limited grant of authority to regulate "*specific*[]" and "*prevalent*" unfair or deceptive practices can't support a Rule so broad that it countermands all those legislative judgments.

6

*Fourth*, major-questions and nondelegation principles resolve any doubts. The Commission never refutes that regulating so many commonplace contracts while overriding multiple federal statutes would involve an "[e]xtraordinary grant[] of regulatory authority" that requires a clear statement from Congress. *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). The Commission instead points to things that have nothing to do with the Rule's breadth or effects. For example, the Commission points to the prior negative option rule—promulgated *before* the Magnuson-Moss limits were imposed—but even that rule regulated only one narrow, particular type of negative option plan. App.7-8. The Commission cites a few other rules[1] and Section 22's requirements for rules affecting the economy by $100 million—but neither shows a clear grant of authority to issue an economy-wide regulation that displaces billions of contracts and Congress's policy decisions about how to regulate them. If the Commission did somehow have such boundless authority, that would violate the nondelegation doctrine. Mot.17-18.

---

[1] Just because these rules exist doesn't mean they are valid, and most of them are narrower than this Rule. *E.g.*, 16 C.F.R. Part 436 (only franchises); 16 C.F.R. Part 433 (requiring specified disclosure for credit).

Appellate Case: 24-3137    Page: 12    Date Filed: 01/02/2025 Entry ID: 5471568

**B.    The Commission violated multiple procedural requirements.**

The Commission effectively concedes that it violated two critical procedural requirements in the FTC Act.

*First*, the Commission concedes it never performed a preliminary regulatory analysis even though the Rule will affect the economy by $100 million or more. Opp.15-16. That alone requires setting the Rule aside. 15 U.S.C. § 57b-3(c)(1). The Commission's only response is that it didn't need to perform a *preliminary* regulatory analysis because it issued a *final* regulatory analysis after acknowledging that the Rule would have major economic effects. Opp.16. But the statute requires a "public comment period in response to the preliminary regulatory analysis," 15 U.S.C. § 57b-3(b)(2)(E), and the Commission never afforded the public that opportunity. The ability to comment on the general economic effects of the then-proposed rule is no substitute for the statutorily required opportunity to comment on the Commission's preliminary regulatory analysis.

*Second*, the Commission concedes that it prevented disclosure of multiple disputed issues of fact, asserting only that "Petitioners have not identified any procedure that was not followed." Opp.17-18. But the

8

statute requires setting aside the Rule if the Commission "precluded disclosure of disputed material facts which was necessary for fair determination" of the Rule. 15 U.S.C. § 57a(e)(3). The Commission never denies it precluded disclosure of multiple disputed issues of fact that were necessary for a fair determination of the Rule—including disputes about specific effects of particular provisions and evidence of particular industries' practices. App.78-80.

### C.   The Rule is arbitrary and capricious.

The Commission claims it addressed the Rule's many problems flowing from its pre-election rush to get the Rule out the door. But it didn't, and it never offered "a satisfactory explanation for its action[s]." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024).

For example, the Commission offers its own nonbinding say-so that the Rule allows for reasonable verification at cancellation. That assurance doesn't appear in the Rule itself, and the Commission never addresses the real chilling effects on security companies and others that need to properly verify identities at cancellation to protect customers.

The Commission then ignores basic contract law and insists the Rule doesn't require a two-step consent process. Yet the Rule requires

9

consent to the recurring subscription "*separately from*" the rest of the contract. Rule § 425.5(a)(1). Thus, companies must obtain a second consent to the rest of the contract. The Commission's refusal to acknowledge this reality is fatal given its concession that two-step consent *will* create problems. App.32.

The Commission also insists that "materiality" is well understood and somehow gives companies guidance, but that's not true either. The Rule extends to "*all* [m]aterial terms" about *any* aspect of *any* recurring subscription contract, "*regardless* of whether those terms" relate to the contract's renewal portion. Rule § 425.4(a). That broad and malleable language hardly gives meaningful guidance.

Any of these problems individually fail arbitrary-and-capricious review. Collectively, they confirm the Commission failed to grapple with (or allow an informal hearing about) multiple problems caused by the Rule's massive scope.

## D. The Rule violates the First Amendment.

The Commission's First Amendment arguments fail. The Commission tries to bootstrap the Rule's speech prohibitions into the FTC Act, claiming that so long as the Commission finds certain practices

10

"unfair" or "deceptive," it can regulate related speech as it wishes. Opp.22. But the Rule facially goes beyond unprotected "deceptive" speech, and the First Amendment isn't cancelled by the Commission's declaration that speech is "unfair." And the Commission doesn't even try to avoid the obvious chilling effects of overbroad and unclear restrictions on, for example, speech that merely "detracts from" or "otherwise undermines" required disclosures.

The Commission asserts that "[n]othing in the Rule prevents sellers from communicating with consumers," Opp.23, but the Rule needn't ban all communication to unconstitutionally burden speech. Regardless, the Rule sometimes restricts or prohibits sellers from interacting with some consumers via live or virtual representatives when cancelling. Rule § 425.6(c)(1). The Commission doesn't even attempt to justify that speech restraint.

As for the compelled disclosures, the Commission says it documented harms to justify them. Opp.23-24. Yet the required disclosures go far beyond the negative option features of contracts and any harms the Commission identifies, Rule § 425.4(a); the Commission

11

simply ignores that overbreadth. *NIFLA v. Becerra*, 585 U.S. 755, 776 (2018) (disclosures can't be "broader than reasonably necessary").

## II. The Balance Of Equities Supports A Stay.

Without a stay, Petitioners will suffer irreparable harms: loss of First Amendment rights, loss of goodwill, and unrecoverable costs. The Commission has no response to the First Amendment harms other than its misplaced belief that there are none. For lost goodwill, the Commission asserts that Petitioners' claims are speculative and lack evidence. Opp.25. But there's a *mountain* of evidence—fourteen sworn declarations from a wide variety of businesses about how they each operate and how complying with the Rule will cause lost goodwill and other harms. The Commission claims Petitioners' declarations contain only "rote assertions," *id.*, but the individually tailored declarations quickly dispel that assertion. *Compare, e.g.*, App.402-06, 411 (Herbi-Systems), App.138-42, 155-18 (Custom Alarm); App.282-84 (NCTA); App.308 (Cox).

The Commission insists that compliance costs are insufficient for relief, citing only one out-of-circuit case. Opp.25. This Court has held the *opposite*: "unrecoverable economic loss . . . does qualify as irreparable

harm." *Iowa Utilities Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996). And though the Commission insists that most companies already comply with existing laws, Opp.25, it concedes that the Rule sweeps more broadly than such laws, App.9.

Finally, the Commission says the Rule will aid consumers, outweighing Petitioners' interests. By that logic, no "consumer protection" rule could *ever* be stayed. The Commission also ignores the public's interest in ensuring that "agencies abide by" the law, *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022), and never disputes that the Rule's costs will be passed on to consumers. The Commission's process—a leisurely rulemaking lasting over five years that shifted into high gear weeks before the presidential election—underscores that something other than a real need for regulation is at work.

## III. The Stay Should Not Be Limited To Declarants.

The Commission's argument for a "limited" stay is a makeweight. Opp.27-29.

Stays by definition "operate[] upon the [administrative] proceeding itself" by "temporarily divesting [the] order of enforceability." *Nken v. Holder*, 556 U.S. 418, 428 (2009); *see* 5 U.S.C. § 705 (courts may "postpone

13

the effective date of an *agency action*") (emphasis added); 15 U.S.C. § 57a(e)(3) (incorporating APA relief). That relief is "not party-restricted," much less declarant-specific. *Career Colleges & Schools of Tex. v. Dep't of Educ.*, 98 F.4th 220, 225 (5th Cir. 2024); *accord Iowa Utilities Bd.*, 109 F.3d at 427 (staying agency rule without regard to party identity); *West Virginia v. EPA*, 577 U.S. 1126 (2016) (same). Thus, when courts find that staying a rule is warranted, they routinely issue general stays. The Commission cites no precedent that does otherwise.

The Commission's associational standing argument is a red herring. The agency concedes that Custom Alarm has standing to seek a stay. Because all Petitioners seek the same relief, only one party with standing is necessary. *Nebraska*, 52 F.4th at 1047. Regardless, the Commission is wrong about associational standing. Organizations with associational standing can seek relief that "will inure to the benefit of those members of the association actually injured." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). Petitioners submitted detailed declarations from identified members about the harms the Rule will inflict. Nothing more is required. *Worth v. Jacobson*, 108 F.4th 677, 685-86 (8th Cir. 2024)

(granting relief to association that identified a member); *Career Colleges*, 98 F.4th at 233-34 (same).[2]

## CONCLUSION

The Court should stay the Rule pending review and enter an administrative stay pending its ruling on this motion.


Dated:  January 2, 2025                     Respectfully submitted,

                                            */s/ Helgi C. Walker*
                                            Helgi C. Walker
                                              *Counsel of Record*
                                            Lucas C. Townsend
                                            Michael Corcoran
                                            Lael D. Weinberger
                                            GIBSON, DUNN & CRUTCHER LLP
                                            1700 M Street, N.W.
                                            Washington, D.C.  20036
                                            (202) 955-8500
                                            hwalker@gibsondunn.com

                                            *Counsel for Petitioners*

---

[2] *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601-02 (8th Cir. 2022), held an association lacked standing where it "failed to identify *any* [injured] members," *Worth*, 108 F.4th at 686.  Even if this were relevant, Petitioners here *have* identified injured members.

Appellate Case: 24-3137     Page: 20     Date Filed: 01/02/2025 Entry ID: 5471568

Elliott M. Davis
Shook, Hardy & Bacon L.L.P.
1800 K Street N.W.
Suite 1000
Washington, DC 20006
(202) 783-8400
edavis@shb.com

*Counsel for Custom Communications, Inc., d/b/a Custom Alarm*

Benjamin M. Flowers
Ashbrook Byrne Kresge LLC
P.O. Box. 8248
Cincinnati, OH 45249
513-201-5775
bflowers@ashbrookbk.com

*Counsel for Michigan Press Association and the National Federation of Independent Business, Inc.*

Mark D. Johnson
Gilbert, Harrell, Sumerford & Martin, P.C.
777 Gloucester Street
Suite 200
Brunswick, GA 31520
(912) 265-6700
mjohnson@ghsmlaw.com

*Counsel for the Chamber of Commerce of the United States of America and the Georgia Chamber of Commerce*

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. Chamber Litigation Center
1615 H Street, N.W.
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2025, an electronic copy of the foregoing reply brief was filed with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit using the appellate CM/ECF system, and service will be accomplished on all registered counsel by the appellate CM/ECF system.

 */s/ Helgi C. Walker*

Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

I certify that this reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts exempted under Federal Rule of Appellate Procedure 27(d)(a)(2)(B), it contains 2,600 words.

I certify that this reply brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point New Century Schoolbook LT.

I further certify that this motion has been scanned for viruses and is virus-free.

Dated:  January 2, 2025

*/s/ Helgi C. Walker*
Helgi C. Walker
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036
(202) 955-8500
hwalker@gibsondunn.com

*Counsel for Petitioners*