Nos. 24-3137 (lead), 24-3388, 24-3415, 24-3442, 24-3469

## IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

―――――――――――――――――――――――――

CUSTOM COMMUNICATIONS, INC., D/B/A CUSTOM ALARM, ET AL.,
*Petitioners*,

v.

FEDERAL TRADE COMMISSION,
*Respondent.*

―――――――――――――――――――――――――

On Petition for Review of a Final Rule of the
Federal Trade Commission (RIN 3084—AB60)

―――――――――――――――――――――――――

## OPPOSITION OF THE FEDERAL TRADE COMMISSION TO MOTION SEEKING LEAVE TO INTERVENE

―――――――――――――――――――――――――

Of Counsel:

JAMES A. KOHM
    *Associate Director*

LAURA KOSS
    *Assistant Director*

KATHERINE JOHNSON
HARRIS A. SENTURIA
JONATHAN W. WARE
    *Attorneys*

FEDERAL TRADE COMMISSION
    Washington, D.C. 20580

LUCAS CROSLOW
    *General Counsel*

H. THOMAS BYRON III
    *Deputy General Counsel*

BENJAMIN F. AIKEN
BRADLEY DAX GROSSMAN
MATTHEW M. HOFFMAN
    *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
bgrossman@ftc.gov
202-326-2994

# TABLE OF CONTENTS

Table of Authorities ....................................................................... iii

Introduction .................................................................................. 1

Statement ..................................................................................... 3

Argument ..................................................................................... 6

    A.   MSA's Request to Intervene Is Untimely ....................... 6

    B.   MSA Lacks Standing ..................................................... 10

    C.   The FTC Act Forecloses MSA's Request ..................... 15

    D.   MSA's Request Is Inconsistent with the Policies
        Governing Intervention under Rule 24 ........................ 16

Conclusion ................................................................................... 24

Appellate Case: 24-3137    Page: 2    Date Filed: 02/18/2025    Entry ID: 5486858

# TABLE OF AUTHORITIES

## CASES

*ACLU of Minn. v. Tarek ibn Ziyad Acad.*,
643 F.3d 1088 (8th Cir. 2011) ........................................................ 10, 11

*Ala. Power Co. v. ICC*,
852 F.2d 1361 (D.C. Cir. 1988) ............................................................. 9

*EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*,
No. 16-1424, 2017 WL 10350992 (6th Cir. Mar.
27, 2017) ..................................................................................................22

*Entergy Arkansas, LLC v. Thomas*,
76 F.4th 1069 (8th Cir. 2023) ..................................... 19, 20, 21, 22, 23

*Env't Integrity Proj. v. Wheeler*,
No. 1:20-cv-1734, 2021 WL 6844257 (D.D.C.
Jan. 27, 2021) ........................................................................................21

*FEC v. Akins*,
524 U.S. 11 (1998) ................................................................................14

*FEC v. NRA Pol. Victory Fund*,
513 U.S. 88 (1994) ................................................................................15

*FTC v. Johnson*,
800 F.3d 448 (8th Cir. 2015) ........................................ 2, 18, 19, 21, 23

*Hollingsworth v. Perry*,
570 U.S. 693 (2013) ........................................................................12, 13

*Int'l Union of Operating Eng'rs, Local 18 v.*
*NLRB*,
837 F.3d 593 (6th Cir. 2016) ..................................................................7

*Int'l Union, UAW v. Scofield*,
382 U.S. 205 (1965) ....................................................................15, 17, 18

*Little Rock Sch. Dist v. N. Little Rock Sch. Dist.*,
378 F.3d 774  (8th Cir. 2004) ...............................................................23

*Nat'l Parks Conservation Ass'n v. EPA*,
759 F.3d 969 (8th Cir. 2014) ................................................................13

Appellate Case: 24-3137     Page: 3     Date Filed: 02/18/2025 Entry ID: 5486858

*Nolles v. State Comm. for Reorg. of School Dists.*,
   524 F.3d 892 (8th Cir. 2008) ................................................................ 14

*North Dakota ex rel. Stenehjem v. United States*,
   787 F.3d 918 (8th Cir. 2015) .................................................. 17, 22, 23

*Religious Sisters of Mercy v. Becerra*,
   55 F.4th 583 (8th Cir. 2022) ................................................................ 12

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .............................................................................. 12

*U.S. Steel Corp. v. EPA*,
   614 F.2d 843 (3d Cir. 1979) .................................................................... 9

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ................................................................ 22

*United States v. Geranis*,
   808 F.3d 723 (8th Cir. 2015) .......................................................... 12, 13

*United States v. Metro. St. Louis Sewer Dist.*,
   569 F.3d 829 (8th Cir. 2009) ................................ 13, 14, 17, 18, 19

*Valley Forge Christian Coll. v. Ams. United for*
   *Separation of Church and State, Inc.*,
   454 U.S. 464 (1982) .............................................................................. 14

*W. Energy Alliance v. Zinke*,
   877 F.3d 1157, (10th Cir. 2017) .......................................................... 21

**STATUTES**

15 U.S.C. § 41 ........................................................................................ 9

15 U.S.C. § 45 ........................................................................................ 3

15 U.S.C. § 56 ...................................................................................... 18

15 U.S.C. § 57a ................................................................................ 4, 11

28 U.S.C. § 2072 ................................................................................ 11

28 U.S.C. § 2112 ............................................................................ 6, 11

**RULES AND REGULATIONS**

16 C.F.R. § 425 ...................................................................................... 5

D.C. Cir. R. 15 ...................................................................................... 9

iv

Fed. R. App. P. 15 ................................................................. 2, 9

Negative Option Rule,
    89 Fed. Reg. 90476 (Nov. 15, 2024) ......................................... 1, 4, 5, 21

v

# INTRODUCTION

This Court should deny the untimely and groundless motion to intervene filed by Main Street Alliance (MSA), an organization that represents small business owners. MSA seeks to assume the duties of the Federal Trade Commission in defending the agency's amended Negative Option Rule, based solely on unfounded speculation about the Commission's willingness to defend the Rule. The Rule prohibits unfair and deceptive practices associated with "negative option" programs, in which a seller imposes recurring charges for a good or service unless the consumer takes affirmative action to cancel the arrangement. Negative Option Rule, 89 Fed. Reg. 90476 (Nov. 15, 2024). The Commission is defending the Rule vigorously in this Court, and MSA has no reason to assume otherwise.

Congress gave the Commission "exclusive authority" to defend its own rules when challenged in federal court. 15 U.S.C. § 56(a)(2). There is no basis for a private organization to usurp the Commission's statutory role. MSA's intervention would upend Congress's determination that the Commission (acting through its Presidentially appointed, Senate-confirmed Commissioners) should oversee and

control the defense of its own rules in the public interest. Indeed, this Court has held that because the FTC is responsible for protecting the public interest, a putative intervenor may not stand in the agency's shoes simply because it disagrees with the agency's litigation strategy or approach to remedying consumer injuries. *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015).

MSA's motion fails to identify any legally protected interests that warrant intervention and fails to satisfy the requirement that a putative intervenor show standing. MSA points to alleged injuries to public interests, asserting that if the Rule were overturned, its members might fall prey to unfair and deceptive practices, and unscrupulous marketers could exploit consumers to gain a competitive advantage. But *any* consumer or business could raise these generalized grievances, which do not establish standing or justify intervention under this Circuit's precedent.

But the Court need not even reach those fundamental problems with MSA's motion because it was not "filed within 30 days after the petition for review [wa]s filed." Fed. R. App. P. 15(d). MSA filed its

2

motion 63 days after the most recent petition for review was filed on December 4, 2024, and has identified no good cause to excuse its delay.

The Commission consents to an amicus brief by MSA, which would provide ample opportunity for the organization to raise any arguments it seeks to present to the Court in this case. But there is no basis for intervention.

## STATEMENT

**1.** The FTC Act prohibits "unfair or deceptive acts or practices" and "empower[s] and direct[s]" the Commission, a bipartisan expert agency, to prevent them. 15 U.S.C. § 45(a). The Commission may define unfair or deceptive acts or practices through case-by-case adjudication, *id.* § 45(b), or rulemaking. As relevant here, Congress authorized the Commission to prescribe "rules which define with specificity acts or practices which are unfair or deceptive," including "requirements … for the purpose of preventing such acts or practices." *Id.* § 57a(a)(1)(B). The rules are reviewable in a court of appeals when an interested person files a petition for review within 60 days after a rule is promulgated. *Id.* § 57a(e)(1)(a). MSA did not file a timely petition for review.

**2.** The Commission first issued the Negative Option Rule in 1973 and reaffirmed and amended it in 1998. 89 Fed. Reg. at 90477-78 & n.12. Since then, negative option programs—including streaming services, gym memberships, and free trials that automatically convert to paid subscriptions—have proliferated, often with adverse effects on consumers. *Id.* at 90481-84. Studies show that more than half of American consumers have been unknowingly enrolled in recurring subscriptions; such charges take an average of three months to cancel. *Id.* at 90483.

In 2024, the Commission amended the Rule after five years of extensive rulemaking proceedings, including 16,000 public comments, three informal hearings, and an extensive factual record comprising (among other things) law enforcement actions, consumer complaints, and economic studies. 89 Fed. Reg. at 90480-84.

The Commission found that sellers have engaged in four prevalent types of deceptive and unfair practices when marketing negative option programs. Sellers have (1) used material misrepresentations to lure consumers into recurring charges; (2) failed to disclose key information prior to billing consumers; (3) failed to obtain consumers' express

4

informed consent; and (4) imposed difficult and cumbersome barriers to cancellation. *Id.* at 90484. The final Rule forbids each of these practices and imposes specific requirements to prevent them from recurring. 16 C.F.R. §§ 425.3-425.6; 89 Fed. Reg. at 90538-90539. For example, the Rule's "Click to Cancel" provision requires sellers to let consumers cancel their subscriptions using mechanisms at least as simple as the mechanism the consumer used to enroll. 16 C.F.R. § 425.6.

**3.** Custom Communications, Inc. filed a petition for review in this Court, and several other organizations challenged the Rule in different circuits. The petitions were consolidated in this Court under 28 U.S.C. § 2112(a)(3). Petitioners then moved for a stay of the Rule, which the Commission opposed. On January 17, 2025, this Court denied petitioners' motion and set an expedited briefing schedule with no extensions.

**4.** On February 5, 2025, MSA moved to intervene as a respondent, arguing that the change of administration has "raised serious doubts that the FTC will continue to vigorously defend and seek to implement

its rule" because a new President has taken office and appointed a new Chairman, who previously voted against the Rule's adoption.  Mot. 2.

## ARGUMENT

MSA has no grounds to intervene: Its motion is untimely, it lacks standing or any legally protected interest in the outcome of this case, and the FTC Act gives the Commission exclusive power to control the defense of agency rules.  Moreover, there is no reason to doubt the Commission's defense of the Rule in this Court, even if that were a relevant consideration.  This Court should not credit MSA's unfounded speculation that the FTC somehow would fail to adequately represent the public interest (as MSA sees it) merely because of a change in leadership.

### A.  MSA's Request to Intervene Is Untimely

**1.**  MSA's motion arrives too late.  Rule 15(d) sets a clear and unequivocal deadline: MSA was obligated to file its motion to intervene "within 30 days after" the last petition for review (No. 24-3469) was filed on December 4, 2024.  MSA's opposition was due January 3, 2025, but MSA waited another 33 days after that deadline, failing to file until

6

February 5.[1]  MSA did not seek an extension of the deadline or seek leave to file out of time.  Nor does the motion offer any plausible reason for the delay.

It does not matter whether the 30-day deadline is jurisdictional.  See Mot. 15-16.  The rule's reasonable and well-understood requirements, like any claim-processing rule, should be enforced unless the movant shows entitlement to an "equitable exception[]."  *Int'l Union of Operating Eng'rs, Local 18 v. NLRB*, 837 F.3d 593, 595-96 (6th Cir. 2016).

MSA seeks to justify its delay by saying that it only recently came to a speculative conclusion that the FTC cannot "be relied upon" to defend the Rule because the agency's new Chairman, Andrew Ferguson, had voted against it.  Mot. 2.  But the Commission's final vote on the

---

[1] Petitioners argue that MSA had an even earlier deadline to seek intervention, claiming that Rule 15(d)'s 30-day deadline began to run when the first "[p]etitions for review were filed on October 22, 2024." Petitioners' Opp. to Motion to Intervene at 5 (Feb. 18, 2025).  But petitioners also a filed a petition for review on December 4, along with a request that it "be consolidated with the other petitions" challenging the Rule.  Protective Petition for Review, No. 24-3469 (Dec. 4, 2024).

Rule was announced on October 16, 2024,[2] and incoming President Trump announced his selection of Ferguson as Chairman on December 10.[3] *See* 15 U.S.C. § 41 ("The President shall choose a Chairman from the Commission's membership."). The facts thus belie MSA's claim that its "need to intervene arose only over the last two weeks." Mot. 13. If MSA were concerned about the Commission's willingness to defend the Rule under Chairman Ferguson's leadership, it was on notice of the facts by December 10, leaving ample time to prepare and file its motion by the January 3 deadline.[4]

---

[2] *See* FTC, *Federal Trade Commission Announces Final "Click-to-Cancel" Rule* (Oct. 16, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/10/federal-trade-commission-announces-final-click-cancel-rule-making-it-easier-consumers-end-recurring.

[3] *See* Associated Press, *Trump says he'll name Andrew Ferguson head of FTC* (Dec. 10, 2024), https://apnews.com/article/andrew-ferguson-federal-trade-commission-trump-khan-695d34974cb09387e0c3ec6757754eac.

[4] MSA cites unrelated steps Chairman Ferguson took to comply with Executive Orders concerning diversity, equity, and inclusion (DEI). Mot. 5-6, 11. *See* FTC, Press Release, *FTC Chairman Ferguson Announces that DEI is Over at the FTC* (Jan. 22, 2025), https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-chairman-ferguson-announces-dei-over-ftc. The Commission's DEI policy changes have nothing to do with this case.

**2.** MSA suggests that it could ignore the deadline on the unsupportable theory that "Rule 15 does not apply" at all to agency rulemaking challenges. *See* Mot. 14-15. But case law confirms that Rule 15—and its deadlines—govern *any* petition for "[r]eview of an agency order," Fed. R. App. P. 15(a)(1), including, as here, orders adopting rules following informal rulemaking procedures. *See, e.g.*, *Ala. Power Co. v. ICC*, 852 F.2d 1361, 1366-68 (D.C. Cir. 1988) (denying movant's "request to be treated as a late-filing intervenor under Fed. R. App. P. 15(d)" in action seeking review of "ICC rulemaking"); *U.S. Steel Corp. v. EPA*, 614 F.2d 843, 844 (3d Cir. 1979) (granting Rule 15(d) intervention in action challenging EPA regulations limiting sulfur content of fuels); D.C. Cir. R. 15(a) (recognizing that Rule 15 applies to "cases involving informal agency rulemaking"). If petitioners' argument were correct, there would be no rules of appellate procedure governing petitions for review of agency rulemaking. But courts have consistently applied Rule 15, including its provision governing intervention, to rulemaking cases.

In fact, Section 18 of the FTC Act—the operative judicial review provision for this case—expressly provides that rulemaking challenges

9

will be subject to the procedural rules governing review of agency orders.  Under Section 18, a challenge to FTC rules "shall" be governed by "[t]he provisions of section 2112 of title 28."  15 U.S.C. § 57a(e)(1)(A).  Section 2112, in turn, recognizes the judiciary's authority to adopt rules of procedure governing "all proceedings instituted in the court of appeals to … review or enforce *orders* of administrative agencies, boards, commissions, and officers."  28 U.S.C. § 2112(a) (citing 28 U.S.C. § 2072) (emphasis added).  Congress thus directed appellate courts to treat FTC rules as "orders" for purposes of the Federal Rules of Appellate Procedure.  Rule 15's deadline controls here, and MSA failed to meet it without any satisfactory excuse.

### B.  MSA Lacks Standing

When, as here, a movant seeks to intervene on the side of a government defendant, the movant must show that the government "will be compelled to cause … injury to the intervenor if the plaintiff prevails," and that the injury would likely be redressed by a ruling for the government.  *ACLU of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011).  The injury must invade a "legally cognizable

right" and be "concrete, particularized, and either actual or imminent." *Id.* at 1092 (cleaned up).

MSA does not address standing explicitly in its motion, but does assert that its members would suffer harm if petitioners prevailed. Mot. 7-9. MSA claims that the Rule protects MSA's members from unfair and deceptive negative option programs and from losing customers to rival businesses engaged in misconduct. *Id.* But those concerns could be raised by *any* consumer or law-abiding business, and thus do not present the particularized harm needed to show standing. Even accepting those allegations as true (*Tarek ibn Ziyad*, 643 F.3d at 1092), MSA lacks a legal interest that justifies intervention, for several reasons.

**1.** MSA cannot rely on associational standing. MSA does not allege that the organization *itself* will uniquely benefit from the Rule. Instead, MSA purports to represent its "thousands of small business members," whose "bottom lines" would suffer if rival businesses "use negative options to trip and trap" consumers into unwanted charges, or if MSA's members incur those charges themselves. Mot. 7-9; Phetteplace Decl. ¶¶ 4-13.

11

Those allegations do not suffice to demonstrate standing. Courts do not simply "accept" an organization's "self-description of [its] members[hip]": the organization must instead "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 601-02 (8th Cir. 2022) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)). But MSA does not name any of its affected members, demonstrate that any of them has standing, or allege that any members consented to MSA intervening on their behalf.

**2.** In addition, MSA makes only generalized claims of harm, and its allegations fail to show the type of "personal and individual injury" required by Article III. *United States v. Geranis*, 808 F.3d 723, 728 (8th Cir. 2015) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013)). MSA's members of course have an interest in avoiding scams and not losing business to shady competitors, but *all* market participants share those interests. On MSA's theory—that its members "purchase goods and services … through negative-option plans" and will be "unable to cancel" "costly deals" (Mot. 8)—any and all American consumers could intervene. But a putative intervenor cannot pursue asserted interests

12

based on a "generalized grievance"; nor can it "seek[] relief that no more directly and tangibly benefits [the intervenor] than it does the public at large." *Geranis*, 808 F.3d at 728 (quoting *Hollingsworth*, 570 U.S. at 706).

MSA cannot invoke the kind of "concrete economic stake" in this action that this Court referred to in *National Parks Conservation Ass'n v. EPA*, 759 F.3d 969 (8th Cir. 2014). *See* Mot. 7-8. In that case, environmental groups sued the EPA seeking an injunction requiring the agency to mandate that a specific power company adopt emission control technologies at a specific plant. *Nat'l Parks*, 759 F.3d at 972. Because the technologies would cost an estimated $280 million, that company had standing to intervene in order to prevent "*direct* financial harm" that it would "*unavoidably*" incur if the environmental groups prevailed. *Id.* at 975 (emphasis added). Here, MSA fails to demonstrate that its members would suffer personalized, direct, and unavoidable injury were the Court to grant petitioners their requested relief.

Instead, this case is on all fours with *United States v. Metropolitan St. Louis Sewer District*, 569 F.3d 829 (8th Cir. 2009), which held that

13

an organization lacked standing to intervene as a defendant to protect its members' interest in having a reliable sewer system, since the members shared that interest with "all of the 1.4 million users" of the system. *Id.* at 835. This is "not the kind of concrete, particularized interest that establishes standing." *Id.*

**3.** Nor can MSA establish standing by speculating that its members would suffer injury if the Commission in the future were to adopt a "deregulatory agenda," and decide that it would no longer "defend and seek to implement" the Rule. *See* Mot. 10-12. Again, these are "generalized grievances, pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982) (cleaned up). "[W]here large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance." *Nolles v. State Comm. for Reorg. of School Dists.*, 524 F.3d 892, 898 (8th Cir. 2008) (quoting *FEC v. Akins*, 524 U.S. 11, 23 (1998)).

Appellate Case: 24-3137    Page: 19    Date Filed: 02/18/2025 Entry ID: 5486858

## C. The FTC Act Forecloses MSA's Request

When a third party seeks to intervene in a case seeking review of agency action, courts should "look to the statutory design of the Act" because "the words of the statute themselves [frequently] elicit an answer." *Int'l Union, UAW v. Scofield*, 382 U.S. 205, 210 (1965). Here, the words of the FTC Act preclude MSA's request to intervene as a respondent.

Congress provided that the Commission "shall have *exclusive authority* to … defend, and supervise the litigation of" any action "to obtain judicial review of a rule prescribed by the Commission … unless the Commission authorizes the Attorney General to do so." 15 U.S.C. § 56(a)(2) (emphasis added). Congress further provided that while "any interested person" may be the *petitioner* in a challenge to an FTC trade rule, the respondent is "the Commission." *Id.* § 57a(e)(1)-(2).

Allowing a third party to intervene as a respondent and alter the direction of the litigation would flout the FTC Act's "statutory design." *Scofield*, 382 U.S. at 201. Congress made a policy choice when it empowered the Commission to oversee the defense of its own rules. *Cf. FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 96 (1994) (describing the

15

assignment of authority to the Attorney General to supervise other litigation as "represent[ing] a policy choice by Congress"). Congress determined that the Commission is best positioned to ensure that any defense of its rules is consistent with the agency's legal interests, policy goals, and statutory mandates. The Commission must weigh the costs and benefits of advancing specific arguments. For example, if the Court were to direct the Commission to reopen the rulemaking record, the statute empowers the Commission alone—not MSA—to decide whether to keep, modify, or withdraw the rule. 15 U.S.C. § 57a(e)(2). Permitting an intervenor to interject new arguments in litigation that are not consistent with the Commission's judgment risks undermining these choices, which Congress entrusted the Commission to make in furtherance of the public interest.

### D. MSA's Request Is Inconsistent with the Policies Governing Intervention under Rule 24

When a court of appeals considers a motion to intervene in connection with a petition for review, the court may consider "the policies underlying intervention" in district court under Rule 24 of the

Appellate Case: 24-3137    Page: 21    Date Filed: 02/18/2025 Entry ID: 5486858

Federal Rules of Civil Procedure. *Scofield*, 382 U.S. at 217 n.10. MSA's intervention request runs counter to those policies.

Under this Court's precedents applying Rule 24, intervention as of right is proper only when the movant demonstrates that it "(1) has a recognized interest in the subject matter of the litigation that (2) might be impaired by the disposition of the case and that (3) will not be adequately protected by the existing parties." *North Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015) (cleaned up). MSA fails to show that it has any cognizable interests in this litigation or that the FTC would not adequately protect such interests.

**1.** Intervention is warranted only when the movant seeks to vindicate "property or other legal rights" upon which the intervenor might have otherwise "br[ought] a lawsuit on [its] own to protect [its] interests." *Metro. Sewer*, 569 F.3d at 839-40 (cleaned up). In *Scofield*, for example, the Supreme Court held that when the NLRB adjudicates a labor dispute among unions, employers, and workers, the party that prevailed before the agency has a right to intervene as a respondent when the losing party petitions for review in federal court. 382 U.S. at 210-22. The Court reasoned that such disputes involve "parochial

private interests" that the intervenor could have invoked in a separate proceeding. *See id.* at 211-13, 218-20. By contrast, "[j]udicial efficiency is not promoted by allowing intervention by a party with no interest upon which it could seek judicial relief in a separate lawsuit." *Metro. Sewer*, 569 F.3d at 840.

In this case, MSA does not assert any rights it could vindicate in a separate action. MSA was not a prevailing party in a dispute before the Commission. The Negative Option Rule was the result of an extensive rulemaking process that included input from many perspectives.

MSA cannot sue petitioners (or anyone else) for violating the FTC Act, as the statute does not create a private right of action. *See Johnson*, 800 F.3d at 452. Nor could MSA sue the FTC for failing to adopt specific rules forbidding unfair or deceptive practices. The statute provides that the FTC "may" adopt such rules, but does not compel the agency do to so. 15 U.S.C. § 57a(a).

The FTC Act gives the Commission the sole authority to determine the content of FTC rules, while the role of the court "[i]s simply to determine whether the agenc[y] ha[s] complied with federal law." *See Metro. Sewer*, 569 F.3d at 840 (cleaned up). But MSA makes

18

no claim that the Commission violated federal law; MSA merely seeks to supplant the FTC's exclusive statutory authority to defend the Rule.[5] Because MSA raises no cognizable claims against any party, it has no right to intervene.

Although MSA alleges that this litigation affects its members' economic interests, "[g]eneral economic interests are not protectible and cannot serve as the basis for intervention." *Id.* at 839.

**2.** MSA also fails to show that the FTC will not adequately represent its interests—like the interests of all Americans—in this litigation. This Court "presume[s] that the government's representation is adequate" when "a proposed intervenor's asserted interest is one that a governmental entity who is a party to the case is charged with protecting." *Entergy Arkansas, LLC v. Thomas*, 76 F.4th 1069, 1071 (8th Cir. 2023). That presumption applies here because Congress charged the FTC with protecting the public from unfair and deceptive practices, and MSA does not assert any distinct or different interest it seeks to defend in this litigation. *See Johnson*, 800 F.3d at 452.

---

[5] Nor could MSA be a conceivable *defendant* in a separate suit brought by petitioners challenging the Rule, as MSA did not issue the Rule.

Rather, MSA seeks to participate as an intervenor solely in an effort to second-guess the Commission's litigation judgment. Precedent forecloses intervention on this basis.

To overcome the presumption of adequate representation, MSA must show that it "stands to gain or lose from the litigation in a way different from the public at large or that its interest is narrower and more parochial than the government's." *Entergy Arkansas*, 76 F.4th at 1071-72 (cleaned up). MSA cannot carry this burden. On the contrary, MSA's motion demonstrates that it seeks to vindicate interests mirroring those of the public at large.

MSA does not assert any unique parochial interests. Rather, MSA claims that it strives to "create a thriving and inclusive economy," Mot. 1, that "prioritizes good jobs, equity, and community," Phetteplace Decl. ¶ 4. MSA also claims to represent the interests of its members who have purchased goods and services through negative-option arrangements and suffered from misrepresentations, unwanted subscriptions, and rebuffed cancellation and refund requests. *Id.* ¶¶ 7, 9. MSA says its members also suffer by losing potential customers when (1) rivals "mislead[] customers into deals they don't want, rather

20

than trying to compete on price and quality," *id.* ¶ 11, and (2) customers reject "fair" negative option deals due to prior bad experiences with "unscrupulous" sellers, *id.* ¶ 10.

But MSA's concerns "are not different in kind" (*Entergy Arkansas*, 76 F.4th at 1072) from the injuries that any consumer or business may suffer from deceptive or unfair negative option practices. As MSA concedes, and as the Commission observed in the Negative Option Rule, businesses are often harmed by "deceptive practices pertaining to negative option features." Mot. 4 (quoting 89 Fed. Reg. at 90489). MSA's interests therefore "are subsumed within the public interest," and the presumption of adequate representation applies. *Johnson*, 800 F.3d at 452.[6]

Because the FTC is presumed to represent MSA's interests, MSA may only intervene if it makes a "strong showing" that the FTC "has

---

[6] This case is unlike *Western Energy Alliance v. Zinke*, 877 F.3d 1157, (10th Cir. 2017) (cited at Mot. 12), where the government had "multiple objectives" that it would need to balance against the intervenor's "conflicting interests." *Id.* at 1169. *See also Env't Integrity Proj. v. Wheeler*, No. 1:20-cv-1734, 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) (same). Here, by contrast, MSA assertedly shares the same objective of protecting consumers from harm that the FTC is charged with vindicating.

committed malfeasance or nonfeasance in protecting the public" or engaged in a "clear dereliction of duty." *Entergy Arkansas*, 76 F.4th at 1072-73 (quoting *Stenehjem*, 787 F.3d at 922). MSA attempts no such showing, nor could it.

Instead, MSA speculates that the new administration will have different policy positions from the last, but "the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." *United States v. City of Los Angeles*, 288 F.3d 391, 391, 403 (9th Cir. 2002). "Campaign rhetoric and perceived philosophic differences without more specific objective evidence in the record are insufficient by themselves to demonstrate adversity of interest." *Id.* (cleaned up).[7] MSA observes that Chairman Ferguson voted against

---

[7] *EEOC v. R.G. & G.R. Harris Funeral Homes, Inc.*, No. 16-1424, 2017 WL 10350992 (6th Cir. Mar. 27, 2017) does not suggest otherwise. *See* Mot. 12. The court there recognized that the charging party in an EEOC proceeding had an "unambiguous[]" right to intervene, as the Supreme Court similarly held in *Scofield* with respect to an NLRB proceeding. The Sixth Circuit merely invoked the new administration's recent policy changes as a reason to excuse the untimely nature of the motion. *Id.* at *1-2. Here, MSA has no valid excuse for its late-filed motion, for the reasons discussed in Point A.

22

the Rule and that the previous Chair, who supported the Rule, has departed. Mot. 10-11. But the FTC is conducting a robust defense of the Rule in this case. In any event, a lawful policy change would not amount to malfeasance, nonfeasance, or dereliction of duty. *See Entergy Arkansas*, 787 F.3d at 1073.

Rather, MSA's grievance at most amounts to disagreement with the FTC's potential future "litigation strategy or objectives," which is "not sufficient" to justify intervention. *Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780 (8th Cir. 2004); *see also Johnson*, 800 F.3d at 452 (third party may not intervene merely because it objects to FTC's "litigation strategy or individual aspects of a remedy") (cleaned up). Nor may MSA intervene simply because it believes the FTC's regulatory approach is or would be too permissive. *See Stenehjem*, 787 F.3d at 922 (environmental groups could not intervene by disagreeing with the government about whether grasslands should have "multiple uses" or be maintained "exclusively" for "conservation and protection").

\* \* \*

In short, MSA has no right to intervene because its grievances amount to speculative public policy disagreements that any member of

23

the public could raise.[8]  MSA cannot displace the Commission's

unbridled statutory power to conduct and control its defense of the Rule

in this Court.

## CONCLUSION

This Court should deny the motion to intervene.

---

[8] The Court should also reject MSA's request for permissive intervention (Mot. 13 n.9) due to MSA's lack of standing and lack of a legally protected interest.  *See Stenehjem*, 787 F.3d at 922-23.  The opportunity to file an amicus brief is a sufficient vehicle for MSA to present its views to the Court.

Appellate Case: 24-3137     Page: 29     Date Filed: 02/18/2025 Entry ID: 5486858

Respectfully submitted,

February 18, 2025

LUCAS CROSLOW
    *General Counsel*

H. THOMAS BYRON III
    *Deputy General Counsel*

BENJAMIN F. AIKEN

*/s/ Bradley Grossman*
BRADLEY DAX GROSSMAN
MATTHEW M. HOFFMAN
    *Attorneys*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
bgrossman@ftc.gov
202-326-2994

Of Counsel:

JAMES A. KOHM
    *Associate Director*

LAURA KOSS
    *Assistant Director*

KATHERINE JOHNSON
HARRIS A. SENTURIA
JONATHAN W. WARE
    *Attorneys*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that the foregoing response complies with the volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 4,512 words, as created by Microsoft Word, excluding the items that may be excluded under Fed. R. App. P. 32(f).

February 18, 2025

*/s/ Bradley Grossman*
Bradley Dax Grossman
Attorney
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, D.C. 20580

## CERTIFICATE OF SERVICE

I certify that on February 18, 2025, I served the foregoing

response on counsel of record using the Court's electronic case filing

system.  All counsel of record are registered ECF filers.

Dated: February 18, 2025        /s/ Bradley Grossman
                                     Bradley Dax Grossman
                                     Attorney
                                     Federal Trade Commission
                                     600 Pennsylvania Ave., NW
                                     Washington, DC 20580